**FILED**

JUN 0 7 2005

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| PENNY H. PETERSEN, | * | CASE NUMBER: 05-**4079** |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | COMPLAINT |
| | * | |
| PROXYMED, INC., a corporation, | * | |
| JERRY FELDMAN, an individual | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COMES NOW, the Plaintiff, Penny H. Petersen, by and through her attorney of

record, and brings this action for damages and other legal and equitable relief from

Defendants' violations of laws, including but not limited to proscribing disability

discrimination in employment and for such other causes of action against the named

Defendants as hereafter stated, and for her Complaint against the Defendants, ProxyMed,

Inc., a Florida Corporation, and Jerry Feldman, an individual, hereby states and alleges as

follows:

## JURISDICTION AND VENUE

1.    Plaintiff, Penny H. Petersen (hereafter referred to as "Plaintiff"), a white

female employee of Defendant, ProxyMed, Inc. (hereafter referred to as

"Defendant ProxyMed", brings this action under 42 U.S.C. § 12117

("Americans with Disability Act") and 28 U.S.C. §§ 1331, 1337 & 1343, under the provision of 28 U.S.C. § 1367 and the court's supplemental jurisdiction to redress the wrongs done to her by Defendant as a result of Defendant's discriminatory actions based on Plaintiff's disability and for terminating her employment for the same reason.

2. Jurisdiction over this action is conferred on this Court by 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over pendent state law claims alleged herein pursuant to 28 U.S.C. § 1367.

3. That Plaintiff timely filed a Charge of Discrimination on June 24, 2004 with the South Dakota Division of Human rights and the United States Equal Employment Opportunity Commission (hereafter referred to as "EEOC").

4. A Dismissal and Notice of Rights was issued by the EEOC on March 14, 2005, and received by Plaintiff on or about March 16, 2005. A true and correct copy of this notice is attached hereto as Exhibit "A" and incorporated herein by reference.

5. Venue properly lies in the Southern Division of the District of South Dakota under 28 U.S.C. § 1391, as it is the district in which the claim arose and the acts alleged as a basis for federal claims took place within the boundaries of the District.

## THE PARTIES

6.      Plaintiff, Penny H. Petersen ("Petersen"') is a 32 year old, Caucasian

woman currently residing in Sioux Falls, South Dakota. At all times

material, Plaintiff was an employee of Defendant, ProxyMed, Inc., located

in Sioux Falls, Minnehaha County, South Dakota, and Plaintiff is a member

of a protected class and within the jurisdictional coverage of the American

with Disabilities Act and all other causes of action alleged herein.

7.      Defendant, ProxyMed, Inc., is a Florida corporation in good standing

authorized to do business and doing business in the state of South Dakota,

primarily engaged in the business of being a clearing house for the

electronic processing of medical and dental claims. Defendant ProxyMed

has installations in several states, and collectively employs more than a one

hundred fifty employees. ProxyMed has approximately 25-30 full time

employees at its Sioux Falls site. The nature and scope of its business is

engagement with knowledge in commerce intended for customers in other

states, and at all times engaged in commerce and in the production of goods

for commerce within the meaning of the above-stated Titles and Acts and

within the jurisdictional coverage of Title VII of the Civil Rights Act.

8.      Defendant, Jerry Feldman (hereafter "Feldman") was at all times pertinent,

an employee of ProxyMed, Inc. (hereafter "ProxyMed") and the immediate

3

supervisor of Plaintiff. Unless otherwise designated, Defendant ProxyMed and Feldman are collectively referred to hereafter as "Defendants".

## FACTS AND GENERAL ALLEGATIONS

9.     Plaintiff, Penny H. Petersen, began her employment on or about November 27, 2000, with Medical Data Insurance Processing, Inc., (hereafter "MDIP"). However, at all times pertinent to this action, Plaintiff,(hereafter a/k/a "Penny") was employed by the Defendant, ProxyMed, Inc., which purchased MDIP in August of 2002, until she was terminated by Defendants on January 26, 2004.

10.    During the time she was employed, Plaintiff was promoted on several occasions and received excellent job evaluations. At the time she was terminated, the Plaintiff held the position of Implementation Manager.

11.    That on or about August of 2003, Plaintiff began having serious medical problems. She was losing weight at a rapid pace. She lost much of her hair, and developed large welts on her veins. The problem spread all over her body. At this time, the Plaintiff, born February 19, 1973, was 30 years old.

12.    Plaintiff began medical testing and advised her supervisors, including her immediate supervisor, Defendant Feldman, of her condition and explained that she needed to attend a series of appointments with the doctor so he could perform a number of tests.

4

13.    At first, Plaintiff was gone approximately eight to ten hours a month. However, the symptoms continued and the testing increased. Then in December, 2003, the appointments increased to three to four times a month, with testing that would last for three to five hours at a time the symptoms not only continued, they worsened and there was no diagnosis. Defendants insisted Plaintiff used vacation time for all of her appointments.

14.    In December of 2003 and January of 2004, Plaintiff had to have MRI's, blood tests, bone marrow biopsies, CAT scans, etc. She experienced great pain on a frequent basis. After some of these tests, she needed time to recover because she couldn't walk and was very debilitated.

15.    However, Plaintiff would make up her work after hours. At no time did Plaintiff fail to perform her job, as is evident by her evaluations.

16.    From September, 2003 until she was terminated, Plaintiff was dropping weight at a tremendous pace and was advised by her doctors to eat a minimum of 3500 calories a day. It was visible to everyone in the office that Plaintiff was losing weight at an unnatural rate. This meant she had to eat at least eight meals a day, so Plaintiff had to have food during work hours. At first she tried to go to the break room to eat, but then found she was in the break room so much it was disruptive to her work. She then began to eat at her desk so she could continue to work. Plaintiff did not

5

think this was going to be a problem since virtually everyone else who worked for ProxyMed, Inc., ate snacks at their desks from time to time. Moreover, Plaintiff was very careful to eat only clean, non-intrusive, healthy snacks, like power bars and Insure supplements. Plaintiff would not stop working and would eat at her desk approximately 3 times during an eight hour work day, in addition to her regular meals. The doctors could not make a diagnosis but insisted Plaintiff had to eat. Plaintiff communicated this to Defendant, Feldman.

17. Plaintiff's supervisors were aware of Plaintiff's problem and her need for food. She had discussed it many times with them. In addition, Defendant Feldman, and B.J. Dvorak, the former owner of the company, acting in the capacity of a consultant to the business, would initiate discussions with Plaintiff about her condition on a regular basis. Before she was diagnosed she lost 40 pounds through the ordeal.

18. In late October of 2003, Plaintiff, who was in management, was looking for someone to assist her in quality control. Defendant Feldman brought Plaintiff his daughter's resume and asked if Plaintiff would interview her. Plaintiff agreed to do so. After the interview, Plaintiff determined the daughter had neither the education nor the experience to perform the job. When Plaintiff refused to hire her, Defendant Feldman then hired his

daughter himself, in direct contravention of Defendant ProxyMed's anti-nepotism policy set forth in the policy handbook. Defendant, Feldman, hired his daughter, at the end of November. Within a few days thereafter, the Human Relations manager contacted Plaintiff about all the "papers you faxed over to me" regarding Plaintiff's alleged hiring of Defendant Feldman's daughter. Plaintiff advised the H.R. Manager that she did not hire Defendant Feldman's daughter, that she did not think the girl was qualified for the position and that it was actually Defendant Feldman who had hired her.

19. Within a week, Defendant Feldman began acts of retaliation and harassment and refused to make reasonable accommodation for Plaintiff's condition. Instead, he took actions which would exacerbate it.

20. At a staff meeting on December 8, 2003, Defendant Feldman abruptly presented a change to the company policy and procedure handbook which was applicable only to the Sioux Falls, ProxyMed and affected only Plaintiff. The change was a provision that stated employees could no longer eat at their desks.

21. This was an intentional act which would directly impact only the Plaintiff. ProxyMed, Inc., had an intranet system which contained the handbook. It was obvious that Defendant Feldman had gone into the intranet program

with an editing program and changed the handbook to affect only the Sioux

Falls workplace. The type font used to add the impacting paragraphs was

different from the regular handbook, and only in Sioux Falls was the

handbook changed.

22.     That Plaintiff was diagnosed with cryofibrinogenaemia on December 11,

2003.

23.     That on December 16, 2003, Plaintiff informed her supervisor, Defendant,

Feldman, Director of Information Technology, about her medical diagnosis

and advised him she would need some time off from work to recover from

the upcoming bone marrow biopsies that were scheduled to be done in

January, 2004. Feldman said Plaintiff would have to fill out vacation

request forms to get that time off. He did not offer short term medical leave

or any other option.

24.     The situation worsened for Plaintiff. Defendant Feldman spoke with a co-

worker of Plaintiff saying that there was a cancer in the office and

sometimes it just had to be gotten rid of it. At this time, Plaintiff was at

Avera Cancer Institute getting a bone marrow biopsy. During the time of

January 16, 2004 to January 19, 2004 Plaintiff used these days of her

vacation time to recover from the bone marrow biopsies due to the pain

following the procedure. Plaintiff had to go home at 3:00 p.m. on January

8

20, 2004 because of the pain.  B.J. Dvorak and Jerry Feldman said Plaintiff had to fill our another vacation form and take ½ day of vacation even though she was only gone a couple of hours.  Plaintiff was in terrific pain for the two weeks after that, but she could not afford any more time off.

25.    Due to the nature of its work, ProxyMed was subject to the HIPPA laws enacted in 2002. In August of 2003, the director of security came to the Sioux Falls site to explain the security requirements of HIPPA and the official ProxyMed confidentiality policy to bring ProxyMed into compliance.  Defendant, Feldman was present, as was Plaintiff and the entire office.  The ProxyMed policy stated no employee could ever share or divulge their password to anyone else, including any other ProxyMed employee or it was grounds for termination.   In addition, each employee's password had to be made up of certain characters and changed every thirty (30) days.

26.    Defendant Feldman refused to follow the company policy or the HIPPA rules and sent a memo that instead of following corporate policy, all the Sioux Falls employees had to follow his own password requirements. These requirements were that all passwords would be comprised of the first three letters of the current month and the last four digits of the employee's social security number.  Defendant Feldman had all the social security numbers

9

and made no secret that he wanted to be able to log on to anyone's computer at any time. Defendant Feldman advised that anyone who did not follow his rule would be fired.

27.   That on January 19, 2004, Plaintiff received a increase in her salary effective February 2, 2004.

28.   Moreover, Plaintiff did not want to violate HIPPA or corporate policy and on January 23, 2004 faxed a copy of Defendant Feldman's memo to the ProxyMed Director of Security. Defendant Feldman held a meeting that afternoon or the next day, and gave an ultimatum that whoever had questioned his decision making on hiring his daughter and on the password policy had to come forward by 5:00 p.m. and resign or be fired.

29.   That Defendant, Feldman, had a lengthy discussion with one of Plaintiff co-workers, about a "cancer" in the office. He said he was going to get rid of the cancer.

30.   On or about January 26, 2004, Plaintiff arrived at work at 7:50 a.m. and was told by Defendant Feldman that "effective immediately you are terminated".

31.   Since the events at issue, the Plaintiff suffered depression and was unable to find sufficient employment at the rate of pay she was previously working at with Defendant, ProxyMed, Inc., and has sought and received counseling

treatment.

## COUNT 1

## VIOLATION OF TITLE 1 OF THE AMERICAN WITH DISABILITIES ACT

32.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 31 and all parts thereof as if specifically set forth herein.

33.  Defendant is an "employer" within the meaning of the ADA.

34.  Defendant Corporation is engaged in an "industry affecting commerce" within the meaning of the ADA and the Civil Rights Act of 1964.

35.  Due to Plaintiff's cryofibrinogenaemia, Plaintiff is an individual with a "disability", as that term is defined by ADA.

36.  Plaintiff is a "qualified person with a disability" within the meaning of ADA, 42 U.S.C. § 12111(8), as she is an individual with a disability who, with or without reasonable accommodations, can perform the essential functions of various positions for Defendants, in Sioux Falls, South Dakota.

37.  Defendants terminated Plaintiff because of her disability of cryofibrinogenaemia.

38.  Defendant refused to permit Plaintiff to work because of her record of a disability, which is defined by the ADA as a physical or mental impairment that substantially limited one or more of Plaintiff's major life activities.

39.  Defendants refused to permit Plaintiff to return to work because it perceived

Plaintiff as having a disability.

40.     Defendant's actions toward Plaintiff on the basis of her disability or perceived disability constitutes a discriminatory act provided by the ADA, 42 U.S.C. § 12112(a).

41.     The unlawful employment practices complained of above were intentional and/or were done with malice or reckless indifference to the federally protected rights of the Plaintiff.

42.     Defendant's discriminatory conduct resulted in the termination, or in the alternative, a constructive discharge of Plaintiff from her employment in violation of federal law.

43.     Defendant's discriminatory action toward Plaintiff on her disability, record of disability or perceived disability, has caused Plaintiff to suffer damages, including lost back wages and future wages, medical expenses, and employment benefits.

44.     Defendant's discriminatory actions toward Plaintiff based on her disability, record of disability or perceived disability has caused Plaintiff to suffer past and future substantial damages for mental anguish, loss of enjoyment of life and other non-pecuniary losses.

45.     Under the ADA, 42 U.S.C. § 12117(a), which incorporates by reference the Civil Rights Act of 1964, 42 U.S.C. §2000e-5, Plaintiff is entitled to back

pay and lost benefits from the date of her termination of employment by Defendants in an amount equaling and exceeding $300,000 as well as front pay.

46.   Under 42 U.S.C. § 1981(a) and 42 U.S.C. § 12117(a), Plaintiff is entitled to recover compensatory damages, including damages for emotional pain, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

47.   Because Defendant's discriminatory conduct was intentional and/or was taken with malice or reckless indifference to the Plaintiff's federal protected rights, Plaintiff is entitled to recover punitive damages.

48.   Under 42 U.S.C. § 12205, Plaintiff is entitled to her reasonable attorney's fees, litigation expenses and costs incurred in this action.

## COUNT 2

## VIOLATION OF S.D.C.L. § 20-13-10

49.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 48 and all parts thereof as if specifically set forth herein.

50.   Defendants are "employers" and "persons" at all times material herein within the meaning of S.D.C.L. § 20-13-1(7) and (11).

51.   Plaintiff was an "employee" and a "person" at all times material herein within the meaning of S.D.C.L. § 20-13-1(6) and (11).

13

52.   Due to Plaintiff's cryofibrinogenaemia, Plaintiff is an individual with a "disability" as that term is defined under S.D.C.L. § 20-13-1(4) and S.D.C.L. § 20-13-1(4)(a).

53.   Defendant refused to permit Plaintiff to work because of her record of having a disability, which is defined by S.D.C.L. § 20-13-1(4) as a physical or mental impairment that substantially limited one or more of Plaintiff's major life activities.

54.   Defendant refused to permit Plaintiff to work because it perceived Plaintiff as having a disability.

55.   Defendant's actions toward Plaintiff on the basis of her disability or perceived disability constitutes and unfair or discriminatory employment practice prohibited by S.D.C.L. § 20-13-10.

56.   Defendants terminated, Plaintiff for her employment in violation of state law.

57.   The unlawful employment practices complained above were intentional and/or were done with malice or reckless indifferences to the rights set in place by the law of the State of South Dakota.

58.   Defendant's discriminatory actions toward Plaintiff based on her disability, record of disability or perceived disability has caused Plaintiff to suffer damages, including lost and future wages, medical expenses and

employment benefits.

59.   Defendant's discriminatory actions toward Plaintiff based on her disability, record of disability or perceived disability has caused Plaintiff to suffer past and future substantial damages for mental anguish, loss of enjoyment of life and other non-pecuniary losses.

60.   Under S.D.C.L. § 20-13-35.1, Plaintiff is entitled to compensatory and punitive damages.

## COUNT 3

## WRONGFUL DISCHARGE

61.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 60 and all parts thereof as if specifically set forth herein.

62.   Plaintiff alleges that the acts and omissions of Defendants and/or their officers, employees, or agents constitute wrongful discharge from employment.

63.   That Defendants attempted to force Plaintiff to commit an unlawful act in violation of federal HIPPA regulations.  Defendants further attempted to make said violation a term or condition of employment.

64.   That Defendant's actions constitutes a public policy exception to the employee-at-will doctrine.

65.   That Defendant's termination of Plaintiff constitutes retaliation for refusal

15

to commit a criminal or unlawful act.

66.   That Plaintiff's actions constitute whistle blowing which promotes the

public good and is a recognized exception to the employment-at-will

doctrine.

67.   That Defendants attempted to force Plaintiff to violated Defendants own

anti-nepotism policy and made said violation a term or condition of

employment.

68.   That as a result of Defendant's wrongful discharge Plaintiff suffered past

and future substantial damages, including lost past and future wages,

medical expenses, employment benefits, and punitive damages.

69.   As a result of Defendant's wrongful discharge, Plaintiff suffered past and

future substantial damages for mental anguish, medical expenses and loss of

enjoyment of life, as well as other non-pecuniary losses.

## COUNT 4

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1

through 69 and all the parts thereof as if specifically set forth herein.

71.   Plaintiff, was at all relevant times employed by Defendants, ProxyMed,

Inc., a Florida Corporation, and immediately supervised by Defendant

Feldman.

16

72. The Defendants engaged in conduct described above recklessly or with the intent of causing the Plaintiff severe emotional distress.

73. The conduct of the Defendants was extreme and outrageous.

74. The Plaintiff incurred severe emotional distress as a result of the Defendants' conduct.

75. During Plaintiff's employment, by the actions of Defendants, Plaintiff was subjected to intentional or reckless infliction of emotional distress including, but not limited to, anxiety, shame, humiliation, embarrassment, anger, worry, depression and stress.

76. Defendant's actions were done intentionally or in reckless disregard of Plaintiff's rights subjecting Defendants to Punitive Damages.

## COUNT 5

## ALTERNATIVE LIABILITY OF PROXYMED, INC.

77. Paragraphs 1 through 76 are incorporated as if fully set out herein.

78. The acts of Jerry Feldman were extreme and outrageous and Jerry Feldman acted recklessly or with the intent of causing the Plaintiff severe emotional distress.  The Plaintiff incurred severe emotional distress as result of Jerry Feldman's conduct.

79. ProxyMed, Inc., is liable for the acts of Jerry Feldman as he was acting within the scope of his employment as a management employee of

ProxyMed, Inc.

80.  Defendants allowed a discriminatory and hostile work environment to take place, and their failure to actively promote, establish and maintain a work environment fee of retaliation and pressure to perform unlawful acts, ora acts against company policy constitutes extreme and outrageous conduct. Similarly, Defendants' acts constituted extreme and outrageous conduct.

81.  By their acts and omissions, Defendants intended to cause Plaintiff severe emotional distress.

82.  As a direct and proximate cause of Defendant's extreme and outrageous conduct, Plaintiff has suffered an extreme disabling emotional response.

83.  As a further direct and proximate result of Defendant's intentional infliction of emotional distress upon Plaintiff, Plaintiff has been damaged in an amount to be determined by the jury.

84.  The acts undertaken by Defendants were done with willful and callous disregard to the interests of the Plaintiff, entitling Plaintiff to an award with exemplary damages against Defendants.

85.  Defendant had a duty to refrain from humiliating, abusive, assaultive and degrading behavior towards Plaintiff.

86.  Defendants knew or should have known the emotional distress was certain or substantially certain to result from its misconduct.

87.   The actions of the Defendants constitute outrageous conduct beyond the
      bounds of decency and intolerable in civilized society.

88.   The extreme and outrageous nature of the conduct arises from the abuse by
      Defendants of their relationship and position which gave the Defendants the
      actual or apparent power to damage Plaintiff's interest.

89.   As a direct and proximate result of Defendant's outrageous conduct,
      Plaintiff has suffered and continues to suffer mental anguish, pain and
      suffering, humiliation, embarrassment, emotional distress and other
      damages in an amount to be determined at trial.

## COUNT 6

## RETALIATION PURSUANT TO 42 U.S.C. § 2000e-3(a)

90.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1
      through 89 and all parts thereof as if specifically set forth herein.

91.   As a result of Plaintiff's engaging in a federally-protected right to oppose
      practices that she reasonably believed constituted violations of federal law,
      Defendants discriminated against Plaintiff by making Plaintiff's working
      conditions intolerable resulting in termination of employment from
      ProxyMed, Inc., in violation of Section 704(a) of Title VII, 42 U.S.C. §
      2000e-3(a).

92.   The unlawful employment practices complained of above were done with

malice or with reckless indifference to the federally protected rights of the Plaintiff.

## COUNT 7

## **RETALIATION**

93.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 92 and all parts thereof as if specifically set forth herein.

94.  Plaintiff's firing was in retaliation for her opposing discrimination on the basis of her physical condition, and her opposition to unlawful violation of a federal act.

95.  The unlawful employment practices complained of above were intentional.

96.  The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

97.  Defendants acts as alleged herein constitute discrimination and Defendants' discriminatory acts have caused Plaintiff to lose her employment and have resulted in lost wages and employment-related benefits in an amount to be determined at the time of trial, together with prejudgment interest thereon from the date due until paid in full.

98.  Plaintiff is entitled to front pay for the damages and loss of career she will have in the future.

20

99.   Defendants' discriminatory acts have also caused Plaintiff to suffer damage to her reputation, extreme emotional distress, humiliation, anxiety and depression in an amount to be determined at trial.

100.  Plaintiff has been required to retain attorneys to prosecute this action and Plaintiff is entitled to recover her attorney fees and reasonable costs incurred herein pursuant to 42 U.S.C.A. §1988 and FRCP 54(d).

101.  Defendants' conduct was malicious and in total disregard of the rights of Plaintiff and is highly repugnant to the interest of society.  Punitive damages in an amount to be determined by the jury should be awarded to punish Defendants and to deter and discourage Defendants and others from acting in a similar fashion.

### COUNT 8

### SOUTH DAKOTA HUMAN RELATIONS ACT

102.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 101 and all parts thereof as if specifically set forth herein.

103.  The Defendant's conduct as articulated above constitutes discrimination in violation  of SDCL § 20-13-10.

104.  Said discrimination was based on gender. Defendants also engaged in retaliation when Plaintiff attempted to exercise her protected rights.

105.  As a direct and proximate result of the discrimination and hostile work

environment, Plaintiff has been damaged in an amount to be determined by the jury.

106. Additionally, the acts undertaken by Defendants were done with willful and callous disregard to the interest of Plaintiff, entitling Plaintiff to an award of exemplary damages against them.

## COUNT 9

## BREACH OF OBLIGATION OF EMPLOYER/BREACH OF DUTY OF EMPLOYER

107. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 106 and all the parts thereof as if specifically set forth herein.

108. As a result of Defendant's attempts to force Plaintiff to violated Defendants own policies and procedures and further making the violation a term or condition of employment, Defendants have breached their obligation of employer pursuant to SDCL 60-4-6 and further breached their duty of care to Plaintiff.

109. As a result of Defendant's breach of employer's obligation Plaintiff suffered damages, including past and future wages, medical expenses and employment benefits.

110. As a result of Defendant's breach of duty, Plaintiff suffered past and future substantial damages for mental anguish, loss of enjoyment of life as well as

other non-pecuniary losses.

## COUNT 10

## BREACH OF CONTRACT

111.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 110 and all the parts thereof as if specifically set forth herein.

112.  That the Defendant's online policies and procedures guide, also know as the ProxyMed, Inc. Employee Policy Manual and also known as Policy and Procedure Manual contained policies prohibiting retaliation against employees for exercising their civil rights.

113.  Defendants engaged in a course of conduct that violated the rules, regulations and disciplinary procedures in employer's employee handbook. and non-retaliation policies thereby breaching the employment contract with Plaintiff.

114.  At all times material hereto, Defendant Feldman was involved in the discrimination and knowledge of the discrimination against Plaintiff and wrongful actions and omissions of Defendant Feldman was at all times related to their duties and responsibilities as agents of ProxyMed, Inc. and/or accomplished by virtue of the authority granted to them and therefore, Defendant ProxyMed, Inc., is liable for the wrongful conduct of its agents and employees under the law of vicarious liability.

## COUNT 11

### PUNITIVE DAMAGES

115.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1

through 114 and all the parts thereof as if specifically set forth herein.

116.  Based on the foregoing allegations, Defendants' conduct showed a

disregard for Plaintiff's rights because Defendants acted willfully or

wantonly to the injury of Plaintiff and is therefore liable to Plaintiff for

punitive damages.

### DEMAND FOR JURY TRIAL

117. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

hereby requests trial by jury of the issues of fact in this action.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1.    That pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

Plaintiff hereby requests trial by jury of the issues of this action; and

2.    For compensatory damages in such amount as the evidence at trial may

show; and

3.    For damages, including by not limited to, those damages allowed by 42

U.S.C. § 2000e et seq, and any other pertinent and applicable statute, rule,

or regulation whether state or federal; and

4.  For an Order awarding judgment against the Defendant for damages of past, present, and future medical expenses, pain and suffering, lost income, impairment of earning capacity, loss of enjoyment of life, attorney's fees and costs, and for such relief as the court deems just and proper under the circumstances. .

5.  For an Order awarding Plaintiff back pay and front pay; and

6.  That the Court enter judgment in favor of Plaintiff on Plaintiff's claim arising under the South Dakota Human Relations Act; and

7.  That the Court order the Defendants to pay Plaintiff's costs in the action;

8.  That the Court order the Defendants to pay Plaintiff's reasonable attorney's fees;

9.  That the Court enter judgment in favor of the Plaintiff on Plaintiff's claims of violation of the South Dakota Human Relations Act, Intentional Infliction of Emotional Distress and Breach of Contract; and

10. For punitive damages in an amount determined at trial; and

11. For costs and disbursements incurred herein, including prejudgment interest and reasonable attorney fees; and

12. For such other and further relief as the Court deems just in the premises.

Dated at Sioux Falls, South Dakota this ___ day of June, 2005.

PIERSOL LAW FIRM

_____
Catherine V. Piersol
515 S. Cliff Avenue, Suite 200
Sioux Falls, SD 57104
(605) 339-0909
Attorney for Plaintiff

## AFFIDAVIT OF PENNY H. PETERSEN

STATE OF SOUTH DAKOTA  )
                        :SS
COUNTY OF MINNEHAHA    )

PENNY H. PETERSEN, being first duly sworn, affirms and says:

1.    That I am a Plaintiff in this action.

2.    That the above statements are true and accurate to the best of my

knowledge, information and belief.

Dated this ___ day of June, 2005.

_____
Penny Petersen

Subscribed and sworn to before me
this ___ day of June, 2005.

_____
Notary Public-South Dakota
My commission expires: 10/8/07
(SEAL)

26

## DISMISSAL AND NOTICE OF RIGHTS

To: Penny H. Petersen
    1615 Deerberry Tr.
    Sioux Falls, SD 57106

From: **Denver District Office**
      **303 East 17th Avenue**
      **Suite 510**
      **Denver, CO 80203**

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32J-2004-00089 | **Ronald L. Houser,** **S&L Coordinator** | **(303) 866-1340** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Jeanette M. Leino* [MAR 1 4 2005]

Enclosure(s)

**Jeanette M. Leino,**
**Acting Denver District Director**

*(Date Mailed)*

cc: Nancy Ham
    PROXYMED, INC.
    3409 Gateway Blvd
    Suite 2000
    Sioux Falls, SD 57106