UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNY H. PETERSEN, | ) | CIV. 05-4079-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | MOTION FOR SUMMARY |
| PROXYMED, INC., a corporation; and | ) | JUDGMENT |
| JERRY FELDMAN, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, ProxyMed, Inc. (ProxyMed) and Jerry Feldman, move for summary judgment on the claims asserted by plaintiff, Penny H. Petersen. Petersen opposes the motion.  Defendants' motion is granted.

**FACTUAL BACKGROUND**

At all times relevant to this action, Petersen was employed by ProxyMed, a company that processes medical and dental claims.[1]  Throughout Petersen's tenure at ProxyMed she received favorable reviews and also received job promotions on more than one occasion.  Petersen was under the supervision of Jerry Feldman while she was a ProxyMed employee.  DSMF 17.

In August of 2003, Petersen asserts that she began to have serious health problems.  Ultimately she was diagnosed with cryofibrinogenaemia, a rare blood disorder. Petersen asserts that as a result of her health problems,

_____

[1]Petersen was originally hired in November of 2000 by Medical Data Insurance Processing, Inc., which was purchased by ProxyMed in 2002.

she experienced dramatic weight loss, loss of some of her hair, and welts. Petersen testified that her condition required her to consume 3500 calories per day, but that she was able to continue to "excel in her duties at ProxyMed." Docket 28 at 2. As a result of her condition, Petersen asserts that she began eating "non-intrusive foods, such as Power Bars and Ensure supplements" at her desk to meet her required daily caloric intake. Docket 38 at 2.

In October of 2003, Petersen and ProxyMed Operations Manager, Dave Dvorak, reviewed applications for a position in ProxyMed's implementation department. DSUMF 18-19. Feldman's daughter, Laura Henriksen, was ultimately hired for the position. DSUMF 20. Petersen asserts that she initially interviewed Henriksen, found her not qualified for the position, and declined to hire her. Docket 38 at 2. Following Henriksen's hire, an anonymous complaint was made to ProxyMed's human resources department contending that Henriksen's hire violated ProxyMed's anti-nepotism policy. DSUMF 23. Petersen asserts that she did not make the complaint. DSUMF 27. After an internal review was conducted, ProxyMed determined that Henriksen's hire did not violate ProxyMed's policy. DSUMF 24-26.

Petersen claims that Feldman retaliated against her for her opposition to hiring his daughter and because of his perception that Petersen lodged the anonymous complaint. Petersen asserts that Feldman changed the employee handbook to prohibit employees from eating at their desks, which had an

adverse effect on Petersen.  Petersen also asserts that Feldman forced Petersen to request vacation days to accommodate her health problems, and that Feldman did not offer her the option of short-term medical leave.

In December 2003 or January 2004, Feldman changed the computer password policy at ProxyMed, to allow him access to his employees' computers.  Petersen believes the change in policy resulted in a violation of HIPPA privacy regulations, and she reported the perceived violation to the ProxyMed Director of Security on approximately January 23, 2004.  Docket 38 at 2.

Petersen's employment was terminated on January 26, 2004.  Petersen alleges that she was terminated as a result of her medical condition and in retaliation for engaging in protected activity.

ProxyMed asserts that Petersen was fired for inappropriate use of ProxyMed's email accounts and for failure to abide by company policy.  With regard to the former, ProxyMed asserts that Petersen drafted inappropriate emails and failed to reprimand subordinates who sent her inappropriate emails.  ProxyMed further alleges that Petersen attempted to subvert ProxyMed's oversight of work emails by using deceptive subject lines and addresses from deactivated accounts.  DSUMF 41-48.  Petersen does not deny that she improperly used the work email system, but asserts that any violation is simply pretext for the true motivation behind her termination.  Defendants

3

assert that although Feldman intended to terminate all three employees involved in the improper use of the email system, only two were terminated because one was deemed essential to the company.  DSUMF 51-52.

Petersen filed a notice of charge of discrimination with the South Dakota Division of Human Rights (SDDHR), alleging that she was discriminated against on the basis of her alleged disability.  After reviewing her charges, the SDDHR issued a finding of no probable cause.  In addition to Petersen's claim of discrimination under the Americans with Disabilities Act (ADA) and under South Dakota state law, Petersen also asserts claims of wrongful discharge, intentional infliction of emotional distress, retaliation, breach of duty of employer, and breach of contract.  Petersen also seeks punitive damages. Defendants move for summary judgment on all claims.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.

4

2d 202 (1986).  Summary judgment is not appropriate if a dispute about a

material fact is genuine, that is, if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient

evidence to establish that there are no genuine issues of material fact and that

the movant is entitled to judgment as a matter of law.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The

nonmoving party is entitled to the benefit of all reasonable inferences to be

drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur.

Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not,

however, merely rest upon allegations or denials in its pleadings, but must set

forth specific facts by affidavits or otherwise showing that a genuine issue

exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

**DISCUSSION**

**I.     Claims Based on Federal Law**

**A.  ADA Claim**

The ADA prohibits discrimination against a "qualified individual with a

disability."  42 U.S.C. § 12112(a).  To establish a prima facie case under the

ADA, Petersen "must show that: (1) [she] was disabled within the meaning of

the ADA; (2) [she] was qualified to perform the essential functions of [her] job,

with or without reasonable accommodation, and (3) [she] suffered an adverse

5

employment action because of [her] disability." Lane v. BFI Waste Sys. of North America, 257 F.3d 766, 769 (8th Cir. 2001) (citing Taylor v. Nimock's Oil Co., 214 F.3d 957, 959-60 (8th Cir. 2000)).  Under the familiar McDonnell Douglas burden shifting framework, if Petersen is able to establish a prima facie case, the burden shifts to defendants to articulate a nondiscriminatory reason for terminating Petersen.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Nimock's Oil, 214 F.3d at 959 (applying the burden-shifting framework in the context of an ADA claim). If defendants are able to demonstrate a nondiscriminatory reason, the burden shifts back to Petersen to show that the reason forwarded by defendants is pretextual.  Id.  At all times, the burden of persuasion remains with Petersen. Id.

Defendants first argue that Petersen cannot make a prima facie case under the first prong of Lane, because Petersen is not disabled under the ADA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment."  42 U.S.C. § 12102(2)(A)-(C).

Under 42 U.S.C. § 12102(2)(A), defendants argue that Petersen's impairment of cryofibrinogenaemia does not substantially limit one or more of her major life activities.  Petersen asserts that as the result of her medical

6

condition, she is required to consume 3500 calories a day.  But Petersen does not assert anything beyond this dietary restriction, and she indicates she can fulfill her medical requirements by eating snack bars and other nutritional supplements throughout the day.  While Petersen asserts that her nutritional needs "substantially affected her ability to engage in one or more major life activities, namely, working," Petersen also asserts that "[b]y making the minimal accommodation of allowing Plaintiff to eat at her desk" defendants could have completely accommodated her disability.  PSUMF 3-4.

In determining whether Petersen's medical condition substantially limited a major life activity, the court must examine her condition "with reference to the mitigating measures taken . . . and the actual consequences which followed." Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 724 (8th Cir. 2002) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999)).  "Health conditions that cause moderate limitations on major life activities do not constitute disabilities under the ADA." Orr, 297 F.3d at 724.

Construing the evidence in the light most favorable to Petersen, the court finds that Petersen has not demonstrated that her medical condition had a substantial effect on her major life activities.  Petersen asserts that her condition requires her to eat numerous times throughout the day.  But Petersen does not assert that there are any specific medical restrictions on the

types of food she eats or specific times when she has to eat.  The court finds that this minimal restriction on Petersen's eating habits does not rise to the level of a disability under the ADA.

Petersen also alleges that she was "regarded" as having such an impairment, and therefore was disabled under § 12102(2)(C).  Petersen bases this assertion on a statement she alleges Feldman made "to the effect that there was a cancer within the company, and that good cells would have to be killed in order to remove bad cells."  PSUMF 5.  In his deposition, Feldman did not deny making the statement, but said the statement was "a metaphor that I have used many, many times over the years[.]" Feldman Deposition, Docket 37, Ex. C at 199.

"An employer regards an employee as disabled if it mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity) or it mistakenly believes that an *actual* impairment substantially limits one or more major life activity."  Christensen v. Titan Dist., Inc., 481 F.3d 1085, 1093 (8th Cir. 2007) (internal quotation omitted) (emphasis in original).  Petersen does not cite, and the court is unaware of, any authority stating that the generic use of a metaphor with medical references is sufficient to create a material issue of fact with respect to an employee being "regarded" as being impaired.  Further, under the facts of this case, the court does not find any evidence to indicate, even assuming the

8

metaphor was directed to Petersen, that the statement had anything to do with Petersen's medical condition.  Accordingly, the court finds that Petersen has not "set forth specific facts by affidavits or otherwise showing that a genuine issue exists" under the "regarded" prong of the disability analysis.  See Forrest, 285 F.3d at 691.  As a result, defendants are entitled to summary judgment on the ADA claim.

In the alternative, even if Petersen has demonstrated sufficient evidence to fulfill the first prong of a claim under the ADA, defendants would be entitled to summary judgment.  The temporal proximity of her termination is sufficient to establish a prima facie case.  See O'Bryan v. KTIV Television, 64 F.3d 1188, 1193-94 (8th Cir. 1995).  The burden then shifts to defendants to set forth a nondiscriminatory reason for her termination under the McDonnell Douglas analysis.  Defendants assert that Petersen was terminated because she drafted and received inappropriate emails and attempted to circumvent ProxyMed's email usage policy.  The burden therefore shifts back to Peterson to demonstrate that defendants' stated nondiscriminatory reason is simply pretext for her termination.

Petersen offers no evidence to refute the nondiscriminatory reasons set forth by defendants for her termination, but relies entirely on the timing of her termination.  It is undisputed that Petersen drafted and received inappropriate emails and attempted to circumvent ProxyMed's email policy.  It is further

9

undisputed that one of Petersen's co-workers was terminated as the result of similar conduct.  Under the circumstances of this case, the court finds Petersen has not set forth sufficient evidence of pretext to create a material factual dispute that defendants' termination of her was causally related to her alleged medical condition.  The court therefore finds that defendants are entitled to summary judgment on Petersen's ADA claim on that basis as well.

**B.  Retaliation Claim**

Defendants also move for summary judgment on Petersen's Title VII claim for retaliation.[2]  42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to discriminate against an employee in retaliation for engaging in protected activity.  Petersen asserts that she was retaliated against for her refusal to hire Feldman's daughter and suspicion that she filed the anonymous complaint to human relations, as well as her objecting to "what she perceived in good faith to be violations of company policy and federal law" when she failed to change her computer password in conformance with Feldman's directive.  See Docket 38 at 7, PSUMF 8-10.  Petersen argues that the temporal proximity between her alleged protected conduct and her

---

[2]Petersen alleges two counts of retaliation in counts VI and VII of her complaint.  Although it is clear that Count VI is brought under 42 U.S.C. § 2000e-3(a), it is unclear as to her legal basis for asserting Count VII.  The court construes Count VII as a claim for retaliation under South Dakota state law.

termination is sufficient to establish a prima facie case on her retaliation claim.  See O'Bryan v. KTIV Television, 64 F.3d 1188, 1193-94 (8th Cir. 1995).

Defendants first argue that Petersen failed to exhaust her administrative remedies with respect to the retaliation claim.  Defendants argue that because Petersen did not check the blank next to "Retaliation" on the intake form, the issue of retaliation was not raised before the SDDHR.  Docket 35 at 30.  Petersen argues that defendants were on notice of the retaliation claim during the course of the administrative proceedings.  Docket 38 at 7.

In Stuart v. General Motors Corp., 217 F.3d 621, 631 (8th Cir. 2000), the Eighth Circuit held that to determine whether an alleged discriminatory action falls within the scope of the complaint, for purposes of the exhaustion requirement, the complaint must be construed liberally.  Accordingly, "a plaintiff 'may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.' " Id. (quoting Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir. 1998)).

A review of the supplement to Petersen's charge made with the SDDHR indicates that her claim for retaliation is reasonably related to the substance of her allegations.  See Docket 34, Ex. C at 31-33.  Further, the court finds that the fact that the "Retaliation" box was not checked on the intake form does not indicate that she did not raise that issue before the SDDHR because

11

it appears that the form was completed by an official with the SDDHR and not Petersen herself.  See Docket 41, Ex. I.

Defendants argue that even if Petersen has sufficiently exhausted her administrative remedies with regard to the retaliation claim, summary judgment is appropriate on the merits of the claim.  To set forth a prima facie showing of a Title VII retaliation claim, Petersen must establish the following elements: (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.  Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2410-16, 165 L. Ed. 2d 345 (2006); Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611 (8th Cir. 2007).  The McDonnell Douglas burden-shifting analysis is also relevant in the context of a retaliation claim.  Lewis v. St. Cloud State University, 467 F.3d 1133, 1138 (8th Cir. 2006).

Defendants argue that Petersen did not engage in protected activity, and further even if she did engage in protected activity, there is no causal connection between that activity and her termination.[3]  "Protected activity is

---

[3]In her response to defendants' motion for summary judgment, Petersen does not argue that her retaliation claim should be construed to allege retaliation for any of defendants' acts other than termination.  But even if Petersen's complaint is construed to allege employment policies that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" under Burlington Northern, the court finds that she has not alleged facts sufficient to survive summary judgment on that claim.  See

'an informal or formal complaint about, or other opposition to, an employer's practice or act . . . if the employee reasonably believes such an act to be in violation of the statute in question." Jeseritz v. Potter, 282 F.3d 542, 548 (8th Cir. 2002) (quoting Sherman v. Runyon, 235 F.3d 406, 409 (8th Cir. 2000)). Petersen alleges that she opposed Feldman's password directive, which she believed violated HIPPA, and the court therefore finds there is a material factual dispute with regard to the first element of her retaliation claim.

Defendants further argue that Petersen cannot demonstrate a prima facie case with respect to the third element of the retaliation claim.  With regard to that element, Petersen relies entirely upon the "temporal proximity" between her alleged protected activity and her termination to demonstrate the alleged causal relationship.  See O'Bryan, 64 F.3d at 1193-94 (8th Cir. 1995). Although temporal proximity can be used to establish a prima facie case of retaliation, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).

---

Burlington Northern, 126 S. Ct. at 2415.  Petersen has only alleged that she was prevented from eating meals and lunch at her desk in retaliation for her refusal to hire Henriksen, and further that she was required to abide by company policy with respect to work absences.  The court finds that these allegations are not sufficient to demonstrate that she suffered a  "materially adverse" employment decision as a result of her alleged protected activities under the Burlington Northern standard.

The court finds that the temporal proximity between Petersen's alleged protected activity and her termination is sufficient to satisfy her initial burden under the <u>McDonnell Douglas</u> burden-shifting framework.  As was the case with Petersen's claim under the ADA, however, Petersen has set forth no evidence to demonstrate that defendants' proffered nondiscriminatory reasons for her termination are pretextual.  Under the circumstances of this case, the court does not find that the temporal proximity between Petersen's alleged protected activity is alone sufficient to carry her burden in demonstrating a prima facie case under the <u>McDonnell Douglas</u> burden-shifting framework for the same reasons as set forth above with regard to her ADA claim. Additionally, with respect to Petersen's claim of retaliation for her complaint that the password policy promulgated by Feldman violated HIPPA, the court finds that defendants' undisputed assertion that the password policy did not violate federal law undercuts Petersen's claim that she was fired in retaliation for internally reporting that policy.  With regard to Petersen's alleged refusal to violate ProxyMed's anti-nepotism policy, the court finds that such activity does not constitute "protected activity."  Accordingly, defendants' motion for summary judgment on Petersen's retaliation claim is granted.

II.   **State-Law Claims**

    A.  **Disability Claim**

Petersen asserts a claim parallel to her ADA claim pursuant to SDCL 20-13-10.  Although it appears to be an issue of first impression, the court finds that the South Dakota Supreme Court would likely look toward federal jurisprudence in interpreting SDCL 20-13-10 for purposes of a disability claim.  See Lenhardt v. Basic Inst. of Tech., Inc., 55 F.3d 377, 379 ("When a state's highest court has not addressed the precise question of state law that is at issue, a federal court must decide 'what the highest state court would probably hold were it called upon to decide the issue.' "). This result would be consistent with the South Dakota Supreme Court's interpretation of SDCL 20-13-10 in the context of claims that arise under Title VII.  See Huck v. McCain Foods, 479 N.W.2d 167, 169 (S.D. 1991).  Accordingly, defendants' motion for summary judgment on Petersen's state-law claim for disability discrimination is granted for the same reasons as set forth above with respect to her ADA claim.

    B.  **Retaliation**

Defendants move for summary judgment on Petersen's second claim for retaliation, which this court has construed to be made under SDCL 20-13-10. The South Dakota Supreme Court, in interpreting SDCL 20-13-10, has noted that the statute is "comparable to the corresponding provision in Title VII" and

15

has interpreted the statute in accordance with federal case law construing Title VII.  <u>Huck</u>, 479 N.W.2d at 169 (S.D. 1991).  Accordingly, defendants' motion for summary judgment on Petersen's state-law claim for retaliation is granted for the same reasons as set forth above with respect to her Title VII retaliation claim.

### C.  Wrongful Discharge

Defendants move for summary judgment on Petersen's claim for wrongful discharge.  Petersen alleges in her complaint that defendants attempted to force her to commit an unlawful act in violation of HIPPA, and further that her "actions constitute whistle blowing which promotes the public good and is a recognized exception to the employment-at-will doctrine." Docket 1, ¶ 66. Petersen also alleges that defendants attempted to force her to violate ProxyMed's anti-nepotism policy.

South Dakota is an "at-will" employment state, and therefore generally an employee who is not employed to a specific term "can be terminated with or without cause by notice of either party."  SDCL 60-4-4, <u>Anderson v. First Century Fed. Credit Union</u>, 738 N.W.2d 40, 46 (S.D. 2007).  In <u>Anderson</u>, the South Dakota Supreme Court discussed the recognized exceptions to the "at-will" doctrine, where termination is contrary to public policy.  <u>Id.</u>  In <u>Johnson v. Kreiser's, Inc.</u>, 433 N.W.2d 225, 227 (S.D. 1988) the court recognized that an employee could bring a claim for wrongful termination if she was fired for

refusal to commit an unlawful act.  Further, in some cases whistleblowers, persons who report criminal or unlawful activity, are protected by the public policy exception to the "at-will" doctrine.  <u>Anderson</u>, 738 N.W.2d at 40.  But "only whistleblowing which promotes the public good is protected by the public policy exception."  <u>Dahl v. Combined Ins. Co.</u>, 621 N.W.2d 163, 167 (S.D. 1988).

In this case the court finds that the conduct alleged by Petersen does not bring her termination within the public policy exception to the "at-will" doctrine.  First, to the extent Petersen argues that she believed the password policy instituted by Feldman violated HIPPA, there is no dispute at this stage in the litigation that ProxyMed's policy was lawful.  Therefore, Petersen was not forced to engage in unlawful activity, nor was her reporting of the lawful activity "whistleblowing" as recognized by the South Dakota Supreme Court.  Second, with respect to any allegations that Petersen attempted to resist Feldman's alleged violations of the ProxyMed anti-nepotism policy, the court finds that the alleged violation of company policy is not a "criminal or unlawful act."  Further, the reporting of any such act does not promote the public good as required by <u>Dahl</u>.

Petersen does not respond to defendants' motion for summary judgment on the wrongful discharge claim.  After reviewing the relevant law and facts of this case, the court finds that Petersen has not set forth any disputed material

17

fact, the determination of which in her favor would allow her to bring a cognizable claim for wrongful discharge under the laws of South Dakota. Accordingly, defendants' motion for summary judgment on that claim is granted.

### D.  Intentional Infliction of Emotional Distress

Petersen asserts a claim of intentional infliction of emotional distress (IIED) against defendants.  In order to establish a claim for IIED, Petersen must show: (1) an act by defendant amounting to extreme and outrageous conduct, (2) intent (or recklessness) on the part of defendant to cause plaintiff severe emotional distress, (3) defendant's conduct was the cause-in-fact of plaintiff's distress; and (4) plaintiff suffered an extreme disabling emotional response to defendant's conduct.  Reeves v. Reiman, 523 N.W.2d 78, 83 (S.D. 1994).  In order for conduct to be considered outrageous, "it must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Richardson v. East River Elec. Power Co-op., Inc., 531 N.W.2d 23, 27 (S.D. 1995).

In the complaint, Petersen does not identify the specific conduct which she claims caused her severe emotional distress.  In her response brief, Petersen asserts that defendants' extreme and outrageous conduct includes "making changes in the Sioux Falls branch policy to forbid employees from

18

eating at their desks shortly after such activity became a necessity for the employee who had refused to hire Mr. Feldman's daughter." Docket 38 at 5. Assuming the conduct alleged by Petersen is true, the court does not find it rises to a level as to be "so extreme as to go beyond all possible bounds of decency" as a matter of law. Petersen does not allege that defendants prevented her from eating as required by her medical condition, only that she was required to do so in the break room. Further, the actual language of the policy only prohibits employees from eating *meals* and *lunch* at their desks, not snacking throughout the day. DSUMF 71. Petersen further admits that she was never told that she could not eat snacks throughout the day at her desk. DSUMF 67. Accordingly, the court does not find that Petersen has shown that there is a material issue of fact regarding her claim for IIED, and defendants' motion for summary judgment on that claim is granted.

### E.  Alternative Liability of ProxyMed, Inc.

Count V of the complaint seeks to impose vicarious liability on ProxyMed, Inc., for Feldman's acts which give rise to the IIED claim. Defendants argue that a claim for vicarious liability is not a separate cause of action, and therefore assert that summary judgment should be granted on that claim. Docket 35 at 29. Petersen does not respond to defendants' arguments or argue that Count V should be construed in any way beyond a claim for IIED. Because the court found that Feldman's acts as a matter of

19

law do not establish a claim for IIED, there can be no vicarious liability on the part of ProxyMed, Inc.  See generally Restatement (Second) of Agency § 219. Accordingly, summary judgment on Count V of the complaint is granted.

### F.  Gender Discrimination

Count VIII of the complaint alleges a claim of gender discrimination in violation of SDCL 20-13-10.  Defendants move for summary judgment on the claim, arguing that Petersen has never alleged that she was discriminated against on the basis of her gender.  Docket 35 at 31.  Petersen explicitly testified in her deposition that she was not claiming that she was discriminated against on the basis of her gender.  Petersen Deposition at 144, Docket 24, Ex. C.  Petersen does not respond to defendants' motion for summary judgment on her gender discrimination claim.  After reviewing the record, the court finds that there is no evidence that Petersen was discriminated against on the basis of her gender.  Because there is no disputed issue of material fact, defendants' motion for summary judgment on that claim is granted.

### G.  Breach of Obligation of Employer/Breach of Duty of Care

Count IX of the complaint alleges a claim of breach of obligation of employer pursuant to SDCL 60-4-6, and breach of employer's duty of care. SDCL 60-4-6 states:

> An employment even for a specified term may be terminated by the employee at any time for any willful or permanent breach of the obligations of the employer to the employee as such.

Defendants argue that SDCL 60-4-6 does not create a duty or obligation on the part of the employer.  Petersen does not respond to defendants' motion for summary judgment on the claim.  After reviewing the statute, the court finds that although SDCL 60-4-6 allows an employee to terminate her employment in the event of a breach of the obligations of the employer, the statute does not create a duty on the part of the employer thereby giving rise to a civil claim.  Accordingly, defendants' motion for summary judgment on that claim is granted.

### H.  Breach of Contract

Petersen asserts a claim for breach of contact alleging that ProxyMed's alleged retaliatory termination of her employment was done in violation of the ProxyMed, Inc. Employee Policy Manual (Policy Manual).  Defendants argue that because South Dakota is an "at-will" employment state, and because ProxyMed never surrendered Petersen's employment at-will status, Petersen's claim for breach of contract must fail as a matter of law.

There is no real dispute that South Dakota is an "at-will" employment state.  See SDCL 60-4-4, Anderson, 738 N.W.2d 40, 46 (S.D. 2007).  The South Dakota Supreme Court has held that in order for an employer to surrender its statutory power to hire and fire at will, "the employer must

21

affirmatively indicate its intent by adopting a personnel policy or manual explicitly providing that a for-cause termination procedure must be followed." Holland v. FEM Elec. Ass'n, Inc., 637 N.W.2d 717, 720 (S.D. 2001).

A review of the Policy Manual does not indicate any intent on the part of ProxyMed to surrender its status as an "at-will" employer.  The Policy Manual repeatedly states that it should not be interpreted as "creating or granting" any contractual rights to the employee.  Docket 34, Ex. A.  Further, the manual explicitly states that all associates are employed "at-will" and that ProxyMed has "the right to terminate employment at any time, for any reason, with or without prior notice or cause."  Id.  Petersen acknowledged in writing that she understood the contents of the Policy Manual, and further that "it is not a contract of employment."  Docket 34, Ex. B.

In response to defendants' motion for summary judgment on the contract claim, Petersen asserts that because SDCL 60-4-4 allows termination at will "unless otherwise provided by statute," and because there is a statute prohibiting disability discrimination, her claim for breach of contract survives summary judgment.  Docket 38 at 8.  Petersen provides no legal authority, and the court is unaware of any, that supports her assertion that this clause creates liability for breach of contract.  Rather, the court finds that when properly construed, the clause simply operates to prevent SDCL 60-4-4 from preempting other state-law provisions that create causes of action for

improper termination.  Petersen can and has asserted a claim for discrimination in violation of the ADA and for unlawful retaliation.  Because the court finds that Petersen was an "at-will" employee, defendants' motion for summary judgment on her breach of contract claim is granted.

Based on the foregoing, it is hereby

ORDERED that defendants' motion for summary judgment (Docket 32) is GRANTED.

Dated April 4, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE